# In the United States District Court
# for the Southern District of Georgia
# Brunswick Division

LUCY PINDER, DENISE MILANI,
and CARMEN ELECTRA, as
assignees of 300 F STREET,
INC.,

    Plaintiffs,

    v.

NAUTILUS INSURANCE COMPANY,

    Defendant.

CASE NO. 2:24-CV-33

## ORDER

Before the Court is Defendant Nautilus Insurance Company's motion to dismiss. Dkt. No. 10. The motion has been fully briefed and is ripe for review. Dkt. Nos. 10, 12, 14. For the reasons set forth below, the Court **DENIES** Defendant's motion.

## BACKGROUND

This case involves an insurance dispute. Plaintiffs, well-known models, previously filed suit against 300 F Street, Inc., which owns the Red Carpet Lounge, a "gentlemen's club" located in Brunswick, Georgia. Dkt. No. 1 ¶ 2. Plaintiffs now assert claims against Defendant Nautilus Insurance Company ("Nautilus")—300 F Street's insurer—for breach of contract, declaratory judgment, and bad faith in violation of O.C.G.A. § 33-4-6.

Plaintiffs Denise Milani a/k/a Denise Trlica, Jamie Edmondson Longoria, Carmen Electra a/k/a Tara Leigh Patrick, Lucy Pinder, and Poala Canas are models who earn their livelihood by modeling and licensing images to entities like magazines or companies for advertisements. Dkt. No 1-1 ¶¶ 1, 10–14, 18. Plaintiffs' success is tied, at least in part, to their goodwill and reputation, so Plaintiffs are selective about for whom they model and the brands with which they work. Id. ¶ 19.

## I.  The Underlying Lawsuit

On December 15, 2021, Plaintiffs filed suit in the Southern District of Georgia against 300 F Street, Inc., the corporation that operates the Red Carpet Lounge, and Scott Jackmore, CEO, CFO, and Secretary of 300 F Street. Id. ¶¶ 7, 15–17. Plaintiffs alleged, inter alia, that the defendants misappropriated and intentionally altered Plaintiffs' images, and then used those images in advertisements to "create the false impression with potential clientele that each Plaintiff either worked at Red Carpet, endorsed Red Carpet, or was otherwise associated or affiliated with Red Carpet." Id. ¶¶ 20, 44. In actuality, Plaintiffs were not affiliated with the Red Carpet Lounge nor had they ever endorsed it. Id. ¶ 46. In fact, Plaintiffs alleged that their images were used without their knowledge or consent, and that they received no benefit, financial or otherwise, from the defendants' use of their images. Id. ¶¶ 47–49. Instead, Plaintiffs alleged they were

2

deprived of income relating to the commercialization of their images. Id. ¶ 54. Additionally, Plaintiffs allege their careers and reputations suffered due to their perceived association with the Red Carpet Lounge. Id. ¶¶ 55, 58–59. The underlying suit was resolved by a final consent judgment in November 2023. Dkt. No. 1-2.

At the time of Plaintiffs' suit, 300 F Street was insured by Nautilus Insurance Company under policy numbers NN771094, NN872854, and NC238550. Dkt. No. 1 ¶ 5. These policies were in place from January 17, 2017, through January 7, 2020. Id. When 300 F Street received Plaintiffs' complaint, it sought defense and indemnification from Nautilus. Id. ¶ 6. Nautilus denied coverage to 300 F Street on the basis that Plaintiffs' claims fell within multiple exclusions contained in the insurance policies. Id. ¶ 35.

**II.  The Current Lawsuit**

On November 13, 2023, Plaintiffs and defendants in the underlying suit (300 F Street and Scott Jackmore) entered into a final consent judgment. Dkt. No. 1-2. The judgment included Plaintiffs' allegation that the underlying defendants used Plaintiffs' images without consent or payment and in a way that suggested Plaintiffs were associated with the Red Carpet Lounge. Id. ¶ 2. It also noted that 300 F Street was insured by Nautilus, and that 300 F Street requested defense and indemnification by Nautilus but was denied. Id. ¶¶ 3-5. The parties settled the claims

with a stipulated judgment to be entered against 300 F Street in the amount of $370,000. Id. ¶ 6. Additionally, as part of the settlement, 300 F Street assigned to Plaintiffs all of its rights, claims, and causes of action against Nautilus. Id. ¶ 8.

On March 1, 2024, Plaintiffs filed suit, as assignees of 300 F Street, against Defendant Nautilus Insurance Company. Dkt. No. 1. Plaintiffs contend that Nautilus improperly denied defense and indemnification to 300 F Street in the underlying lawsuit in violation of its insurance agreement. Id. ¶¶ 44–48. Accordingly, Plaintiffs seek a declaratory judgment concerning whether Nautilus had to defend, and has a duty to indemnify, 300 F Street in the underlying suit. Id. ¶ 50. Lastly, Plaintiffs argue that Nautilus acted in bad faith in violation of O.C.G.A. § 33-4-6 when it denied defense and indemnification to 300 F Street. Id. ¶¶ 53–58.

Nautilus moved to dismiss Plaintiffs' claims on June 7, 2024. Dkt. No. 10. Plaintiffs responded in opposition on June 21, 2024, dkt. no. 12, and Nautilus filed a reply in support of its motion on July 2, 2024, dkt. no. 14.

## LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." While this pleading standard does not require "detailed factual allegations," "labels and conclusions" or "a formulaic recitation of the elements of a

cause of action will not do." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). To withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570). A complaint is plausible on its face when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

In deciding whether a complaint states a claim for relief, the Court must accept the facts alleged in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Ray v. Spirit Airlines, Inc., 836 F.3d 1340, 1347 (11th Cir. 2016). The Court should not accept allegations as true if they merely recite the elements of the claim and declare that they are met; legal conclusions are not entitled to a presumption of truth. Iqbal, 556 U.S. at 678-79.

A complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." Fin. Sec. Assurance, Inc. v. Stephens, Inc., 500 F.3d 1276, 1282-83 (11th Cir. 2007) (per curiam) (quoting Roe v. Aware Woman Ctr. for Choice, Inc., 253 F.3d 678, 683 (11th Cir. 2001)). Ultimately, if

"the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'—'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

While the factual allegations set forth in the complaint are to be considered true at the motion to dismiss stage, the same does not apply to legal conclusions set forth in the complaint. Sinaltrainal v. Coca-Cola Co., 578 F.3d 1252, 1260 (11th Cir. 2009) (citing Iqbal, 556 U.S. at 678). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. The Court need not "accept as true a legal conclusion couched as a factual allegation." Twombly, 550 U.S. at 555 (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)).

Lastly, exhibits attached to pleadings become part of a pleading. Fed. R. Civ. P. 10(c). Consequently, documents attached to a motion to dismiss can be considered by the Court without converting it into a motion for summary judgment as long as the attachment is "(1) central to the plaintiff's claim; and (2) undisputed." Horsley v. Felt, 304 F.3d 1125, 1134 (11th Cir. 2002); see also Taylor v. Appleton, 30 F.3d 1365, 1368 n.3 (11th Cir. 1994) (holding that an exhibit to the complaint was "part of the pleadings" so "the 12(b)(6) motion was not converted to a motion

6

for summary judgment").[1] "'Undisputed' in this context means that the authenticity of the document is not challenged." Horsley, 204 F.3d at 1134.

**DISCUSSION**

## I.   Interpreting Insurance Contracts Under Georgia Law

Under Georgia law, "[i]t is well settled that insurance policies, even when ambiguous, are to be construed by the court, and no jury question is presented unless an ambiguity remains after application of the applicable rules of contract construction." First Fin. Ins. v. Am. Sandblasting Co., 477 S.E.2d 390, 391–92 (Ga. Ct. App. 1996) (citation omitted). An insurance policy "should be read as a layman would read it and not as it might be analyzed by an insurance expert or an attorney." Ga. Farm Bureau Mut. Ins. Co. v. Smith, 784 S.E.2d 422, 424 (Ga. 2016) (internal quotations and citations omitted); see also Duckworth v. Allianz Life Ins. Co. of N. Am., 706 F.3d 1338, 1342 (11th Cir. 2013) (stating that under Georgia law "[a]n insurance policy should be read as a layman would read it"); First Fin. Ins., 477 S.E.2d at 391–92 ("Because insurance policies are contracts of adhesion, drawn by the legal

---

[1] Nautilus attached certified copies of the insurance policies as exhibits to its motion to dismiss. See Dkt. Nos. 10-1, 10-2, 10-3. The policies are "central to the [P]laintiffs' claims" about Nautilus's duty to defend and indemnify 300 F Street, and Plaintiffs do not raise any issues regarding the authenticity of the policies. Horsley, 204 F.3d at 1134. Consequently, the exhibits will be considered as part of the motion to dismiss without converting the motion to one for summary judgment.

draftsman of the insurer, they are to be construed as reasonably understood by an insured."). Thus, "[t]he test is not what the insurer intended its words to mean, but what a reasonable person in the position of the insured would understand them to mean." U.S. Fire Ins. Co. v. Cap. Ford Truck Sales, 355 S.E.2d 428, 429 (Ga. 1987) (internal quotation marks and citation omitted).

When the language in a contract is unambiguous, "the court's job is simply to apply the terms of the contract as written, regardless of whether doing so benefits the carrier or the insured." Reed v. Auto-Owners Ins. Co., 667 S.E.2d 90, 92 (Ga. 2008). However, "when a policy provision is susceptible to more than one meaning, even if each meaning is logical and reasonable, the provision is ambiguous[.]" Ga. Farm Bureau Mut. Ins. Co., 784 S.E.2d at 424-25; see also Duckworth, 706 F.3d at 1342 ("Georgia law teaches that an ambiguity is duplicity, indistinctness, an uncertainty of meaning or expression."). In these situations, Georgia courts must "apply the rules of contract construction to resolve the ambiguity." Duckworth, 706 F.3d at 1342. Notably, "ambiguities are construed against the drafter of the contract (i.e., the insurer), and in favor of the insured." Id.

To assess whether a claim falls within an insured's coverage and triggers the insurer's duty to defend, courts must "compare the allegations of the underlying complaint against the provisions of the policy." Travelers Prop. Cas. Co. of Am. v. Kansas City

Landsmen, L.L.C., 592 F. App'x 876, 882 (11th Cir. 2015) (applying Georgia law). Thus, the first part of the analysis in these cases is usually to determine "whether the alleged conduct was covered under the coverage provisions of any insurance policy." Id. If the alleged conduct is covered, then the Court must assess "whether any exclusion provisions of the applicable policy precluded coverage." Id.

Here, the complaint alleges that Plaintiffs' claims are "based on factual allegations that pertain to 300 F Street's advertising activities and advertisements," and that Nautilus's policies at issue provide coverage for "Personal and Advertising Injury." Dkt. No. 1 ¶¶ 25-29, 32. The policies define "personal and advertising injury" to include injuries arising out of "[o]ral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services," "[o]ral or written publication, in any manner, of material that violates a person's right of privacy," and "[t]he use of another's advertising idea in 'advertisement.'" Dkt. Nos. 1 ¶¶ 26-28, 10-1 at 28, 10-2 at 31, 10-3 at 29.

Nautilus does not dispute that Plaintiffs' claims fall within the personal and advertising injury coverage. Dkt. No. 10 at 6. Instead, the parties disagree over the applicability of exclusion

provisions. Nautilus claims its duties to defend and indemnify[2] 300 F Street for the underlying lawsuit are excused by two policy exclusions: the Knowing Violation Exclusion and the Intellectual Property Exclusion.

## II. Policy Exclusions

Georgia law allows an insurance company to "fix the terms of its policies as it sees fit, so long as they are not contrary to the law, and it may insure against certain risks while excluding others." Auto-Owners Ins. Co. v. Neisler, 779 S.E.2d 55, 59 (Ga. Ct. App. 2015) (citations omitted). However, "[a]s with any insurance policy, we construe the policy exclusions most strongly against the insurer and in favor of providing the indemnity sought." Murphy v. Ticor Title Ins. Co., 729 S.E.2d 21, 24 (Ga. Ct. App. 2012). Thus, "an insurer seeking to invoke a policy exclusion carries the burden of proving its applicability in a given case." First Specialty Ins. Corp., Inc. v. Flowers, 644 S.E.2d 453, 455 (Ga. Ct. App. 2007) (citation omitted). "An insurer

---

[2] Under Georgia law, "the duty to defend an insured is separate and independent from the obligation to indemnify." Elan Pharm. Rsch. Corp. v. Emps. Ins. Of Wausau, 144 F.3d 1372, 1375 (11th Cir. 1998) (citing Penn-Am. Ins. Co. v. Disabled Am. Veterans, Inc., 490 S.E.2d 374, 376 (Ga. 1997)). Thus, even if the insurer may not be required to indemnify an insured "for a liability the insured incurs outside the terms of the insurance contract, an insurer must provide a defense against any complaint that, if successful, might potentially or arguably fall within the policy's coverage." Id.; see also Continental Cas. Co. v. Winder Labs., LLC, 73 F.4th 934, 948 (11th Cir. 2023) (collecting cases holding the same).

can carry its burden of showing that a policy exclusion applies by relying exclusively upon the allegations against the insured in the underlying complaint." Id. (citation omitted).

## A. Knowing Violation

The insurance policies in this case preclude coverage for the "Knowing Violation of Rights of Another," which applies to "'[p]ersonal and advertising injury' caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict 'personal and advertising injury.'" Dkt. Nos. 10-1 at 19, 10-2 at 22, 10-3 at 20. Additionally, there is an exclusion for "Material Published With Knowledge of Falsity" which encompasses "'Personal and advertising injury' arising out of oral or written publication, in any manner, if done by or at the direction of the insured with knowledge of its falsity." Id.

Plaintiffs argue that although they allege knowing violations of their rights, their complaint includes, in the alternative, allegations of negligence with respect to advertising materials and practices. Dkt. No. 12 at 11. Nautilus argues that the "knowing violation" exclusion applies because Plaintiffs allege that 300 F Street misappropriated their images with the intent to deceive the public into believing that Plaintiffs were associated with the Red Carpet Lounge. Dkt. No. 10 at 8.  Further, Nautilus argues the

11

complaint contains no factual support for Plaintiffs' negligence claims. Dkt. No. 14 at 7–10.

It is true that Plaintiffs allege in detail that the underlying defendants acted knowingly. See, e.g., Dkt. No. 1-1 ¶ 20 ("Each of the Plaintiffs' Images was misappropriated, and intentionally altered, by Defendants to make it appear that they worked at, endorsed, or were otherwise associated or affiliated with Defendants."), ¶ 44 ("Defendants have used, advertised, created, printed, and distributed the Images of Plaintiffs, as further described and identified above, to create the false impression with potential clientele that each Plaintiff either worked at Red Carpet, endorsed Red Carpet, or was otherwise associated or affiliated with Red Carpet."), ¶ 46 ("Defendants were well aware that none of the Plaintiffs have ever been affiliated with or employed by Red Carpet, and at no point have any of the Plaintiffs ever endorsed Red Carpet, or otherwise been affiliated or associated with Red Carpet."), ¶ 53 ("Defendants were aware that, by using Plaintiffs' Images, they were violating Plaintiffs' right to privacy, Plaintiffs' right of publicity, and creating a false impression to potential customers that Plaintiffs worked at or endorsed Red Carpet."). However, the complaint also supports Plaintiffs' alternative claim of negligence. See Fed. R. Civ. P. 8(d)(3) (allowing a party to state "as many separate claims . . . as it has regardless of consistency").

Viewing the complaint in the light most favorable to Plaintiffs, there is a sufficient basis to support a claim for negligence. For instance, Plaintiffs allege that the underlying defendants were negligent in selecting Plaintiffs' images for their advertisement because they knew or should have known that the Plaintiffs were not Red Carpet employees. Dkt. No. 1-1 ¶ 110. Accepting the facts alleged in the complaint as true, the Court can draw the reasonable inference that because Plaintiffs were well-known professional models, the underlying defendants "should have known" that Plaintiffs had no affiliation with the Red Carpet.

In the complaint, Plaintiffs allege facts to support that Plaintiffs are widely known models who the underlying defendants knew or should have known were not Red Carpet employees or endorsers. For example: (1) Plaintiff Milani is "the world's most famous pinup model" with "over 660 thousand followers on Instagram, 6.3 million Facebook likes, and 126 thousand followers on Twitter," (2) Plaintiff Longoria was a Playboy model and is the wife of Major League Baseball Player Evan Longoria, (3) Plaintiff Electra is an actress in movies like Cheaper by the Dozen 2 and has 2.9 million Facebook followers and one million Instagram followers, and (4) Plaintiff Pinder has been involved in national and international campaigns with well-known brands and has one of the "bestselling model calendars year after year." Id. ¶¶ 25, 28, 31, 34.

Furthermore, Plaintiffs alleged that the underlying defendants were negligent because they failed to implement or adhere to policies and practices to prevent the unauthorized use of an individual's image or likeness, failed to enforce or implement these policies, failed to communicate these policies to employees, and failed to supervise employees to ensure compliance with policies as well as state and federal law. Id. ¶¶ 122-23. Plaintiffs also alleged that the underlying defendants were negligent in hiring, screening, retaining, supervising, and training employees. Id. ¶ 123. To support these claims, Plaintiffs alleged that the underlying defendants did not follow the typical modeling industry procedure to hire a model for commercial purposes and instead just took images from Plaintiffs' social media, the underlying defendants did not contact Plaintiffs for permission to use their images, and the underlying defendants did not obtain permission to use Plaintiffs' images or pay for use of the images. Id. ¶¶ 24, 50-51, 57-58.

While there is significant support in the complaint that the underlying defendants' conduct was intentional or knowing such that the knowing violation exclusion might apply, at this stage the Court cannot ignore the sufficient factual content to support Plaintiffs' alternative claim that the underlying defendants' misappropriation was negligent. This necessarily means there is at least one claim that "might potentially or arguably fall within

14

the policy's coverage," which could trigger Nautilus's duty to defend. <u>Elan Pharm. Rsch. Corp.</u>, 144 F.3d at 1375. Therefore, Nautilus's motion to dismiss on the basis of the Knowing Violation Exclusion is **DENIED**.

## B. Intellectual Property Exclusion

Nautilus next argues that the Intellectual Property Exclusion excuses its duties to defend and indemnify the defendants in the underlying action.

The Intellectual Property Exclusion (the "IP Exclusion") states that coverage does not apply to a

> "Personal and advertising injury" arising out of the infringement, use or violation of **"intellectual property rights"**, including the infringement, use, or violation of another's **"intellectual property rights"** in [the insured's] "advertisement."

Dkt. No. 10-1 at 54, 10-2 at 58, 10-3 at 56 (emphasis added). The contract defines intellectual property rights as "exclusive rights pertaining to the **creations of the mind**, both artistic and commercial, that have potential commercial value and may have a right to protection. 'Intellectual property rights' include, but are not limited to, copyrights, domain names, industrial design rights, patents, trademarks, trade dress, trade names, or trade secrets." <u>Id.</u> (emphasis added).

Nautilus argues that even though, as pled, Plaintiffs' claims fall within the coverage provided for advertising injury, these claims also unambiguously fall within the IP Exclusion. Dkt. No.

15

10 at 6. Plaintiffs argue that their claims do not fall within the IP Exclusion because an individual's image and likeness are not "creations of the mind." Dkt. No. 12 at 6. Plaintiffs further argue that if the Court holds that "creations of the mind" include image and likeness then the phrase is ambiguous and must be construed in favor of Plaintiffs. Id. at 7–10.

For the IP Exclusion to apply, two things must be true: (1) the misappropriation of one's image or likeness must fall within the definition of "intellectual property rights" as defined in the contract and (2) Plaintiffs' injury must "aris[e] out of the infringement, use or violation of 'intellectual property rights'" in 300 F Street's advertisement. Dkt. Nos. 10-1 at 54, 10-2 at 58, 10-3 at 56.

### 1. "Creation of the Mind"

Insurance policy exclusions are construed narrowly in favor of the insured, so Nautilus must show that "creations of the mind" includes image and likeness. See Claussen v. Aetna Cas. & Sur. Co., 380 S.E.2d 686, 688 (Ga. 1989) ("Thus, if an insurance contract is capable of being construed two ways, it will be construed against the insurance company and in favor of the insured."); Cunningham v. Middle Ga. Mut. Ins. Co., 601 S.E.2d 383, 385 (Ga. Ct. App. 2004) ("In resolving this issue, we apply the rule that any exclusion from coverage sought to be invoked by the insurer is to be strictly construed.").

Contract language that is "clear and unambiguous" is enforced based on the clear terms of the contract. Ironshore Specialty Ins. Co. v. RPG Hospitality, LLC, 889 S.E.2d 394, 398 (Ga. Ct. App. 2023). If the contract is ambiguous, meaning it includes language that is duplicitous, indistinct, or uncertain in meaning or expression, Duckworth, 706 F.3d at 1342, then the Court must ascertain the ordinary meaning of the phrase and construe the language based on "what a reasonable person in the position of the insured would understand them to mean." U.S. Fire Ins. Co., 355 S.E.2d at 429. In the instant case, the contract language defines "intellectual property," see supra section II.A, but does not define "creations of the mind" resulting in an "uncertainty of meaning or expression." Duckworth, 706 F.3d at 1342. At this time, Nautilus has failed to satisfy its burden of proving that the language is unambiguous and that the IP Exclusion applies. Flowers, 644 S.E.2d at 455.

Nautilus argues that "creations of the mind" means "conscious creations." Dkt. No. 14 at 4. Thus, because Plaintiffs, or someone on Plaintiffs' behalf, "consciously created" the images at issue to cultivate Plaintiffs' brands, the images are intellectual property.[3] On the other hand, Plaintiffs suggest that "creations

---

[3] Nautilus argues that based on Eleventh Circuit precedent, Plaintiffs' images are original, making them "creations of the mind." Dkt. No. 12 at 4-5 (citing Pohl v. MH Sub I LLC, 770 F. App'x 482, 487 (11th Cir. 2019) (quoting Latimer v. Roaring Toyz,

of the mind" refers to a specific thing that is created such as a song. Dkt. No. 12 at 6 n.4–5. Plaintiffs also point out that Nautilus wavers over what "creations of the mind" includes; for example, Nautilus suggests the phrase may include either the advertisements created by 300 F Street or Plaintiffs' images. Dkt. Nos. 10 at 7; 12 at 8–9; 14 at 7. Put simply, if Nautilus, the insurer and drafter of the policy, is uncertain as to what "creations of the mind" includes, the phrase is ambiguous because it is susceptible to more than one reasonable meaning. Ga. Farm Bureau Mut. Ins. Co., 784 S.E.2d at 424–25; see also Duckworth, 706 F.3d at 1342.

Nautilus does not present, and the Court has not found, any Eleventh Circuit or Georgia case law that supports Nautilus's interpretation of "creations of the mind." Instead, Nautilus relies on cases discussing whether publicity rights are intellectual property. See Hepp v. Facebook, 14 F.4th 204, 208–

---

Inc., 601 F.3d 1224, 1234 (11th Cir. 2010))). However, the case law that Nautilus cites for this proposition applies to copyrights. For copyright protection, a plaintiff must show (1) she owns a valid copyright and (2) the infringing work copies "constituent elements of the work that are original." Pohl, 770 F. App'x at 487. In this case, neither party argues that Plaintiffs' image or likeness is subject to copyright protections. Dkt. Nos. 10, 12 at 5–7, 14 at 1–7. Instead, the parties' arguments revolve around whether Plaintiffs' image and likeness can even be considered intellectual property. Thus, case law addressing the originality requirement of copyright law has no bearing here.

215 (3d Cir. 2021); <u>Almeida v. Amazon.com, Inc.</u>, 456 F.3d 1316, 1324 (11th Cir. 2006). These cases are distinguishable.

The backdrop of <u>Hepp</u> and <u>Almeida</u> includes the Communications Decency Act ("CDA"), 47 U.S.C. § 230. The CDA was created "to promote self-regulation of Internet service providers." <u>800-JR Cigar, Inc. v. GoTo.com, Inc.</u>, 437 F. Supp. 2d 273, 295 (D.N.J. 2006). "Basically, the Act shields service providers from liability for the content of websites of third parties that are accessed through the Internet." <u>Id.</u> Both <u>Hepp</u> and <u>Almeida</u> discuss § 230(e)(2) of the CDA, which states, "Nothing in this section shall be construed to limit or expand any law pertaining to intellectual property." The question in those cases was whether "any law pertaining to intellectual property" includes state laws. As part of the analysis, the courts discussed whether the state statutes at issue involved intellectual property.

In <u>Hepp</u>, the court held that a Pennsylvania statute that addressed the unauthorized use of one's name or likeness for commercial or advertising purposes "pertain[ed] to intellectual property." 14 F.4th at 212–14. Critically though, the court noted it "express[ed] no opinion as to whether other states' rights of publicity qualify as intellectual property as a matter of federal law." <u>Id.</u> at 214.

In <u>Almeida</u>, the plaintiff brought a claim under Florida's right-of-publicity statute against Amazon.com, Inc. for displaying

her image on its websites in furtherance of its sale of a book. 456 F.3d at 1318. In her appeal, the plaintiff asserted that the district court erred in concluding that the CDA preempted her claim, because the right of publicity is an intellectual property right. The Eleventh Circuit held that "the district court did not need to address the difficult issues of application of the CDA" to the Florida statute, because the plaintiff's right-of-publicity claim would not withstand a motion to dismiss under the Florida statute.  456 F.3d at 1324.

To support that name and likeness constitute intellectual property in this case, Nautilus relies on a line from Almeida stating, "[T]here appears to be no dispute that the right of publicity is a type of intellectual property right." Id. at 1323; Dkt. No. 14 at 5. Nautilus's reliance is misplaced for at least three reasons. First, the language is dicta. In Almeida, the parties simply did not argue about whether publicity rights are intellectual property; thus, the Court did not address the issue. 456 F.3d at 1323. Second, as noted above, Almeida involved Florida law. Here, the insurance policies hinge on Georgia law. Third, although Nautilus notes that the right to publicity exists in Georgia, see dkt. no. 14 at 5; Martin Luther King, Jr., Ctr. for Soc. Change, Inc. v. Am. Heritage Prod., Inc., 296 S.E.2d 697, 701 (Ga. 1982) (noting that the right to publicity was established in Georgia in Cabaniss v. Hipsley, 151 S.E.2d 496 (Ga. Ct. App.

1966)); <u>Cabaniss</u>, 151 S.E.2d 496 (establishing the right to publicity in the tort context), Nautilus cites no state or federal case law stating that the right to publicity is, in fact, intellectual property.

Georgia law requires that "[w]here an insurer grants coverage to an insured, any exclusions from that coverage must be defined clearly and distinctly." <u>Hurst v. Grange Mut. Cas. Co.</u>, 470 S.E.2d 659, 663 (Ga. 1996). In this instance, the contract does not define "creations of the mind" nor does it explicitly include image and likeness in the definition for intellectual property. Because the IP Exclusion can be reasonably construed multiple ways, it is ambiguous and "will be construed strictly against the insurer/drafter and in favor of the insured." <u>Id.</u> Accordingly, contract interpretation and dismissal of Plaintiffs' claims is improper at this time. <u>Cf.</u> <u>BioHealth Med. Lab., Inc. v. Cigna Health & Life Ins. Co.</u>, 706 F. App'x 521, 524 (11th Cir. 2017) (citing Georgia case law to support the proposition that ambiguity "is sufficient to render discovery into extrinsic evidence essential before the contract can be definitively interpreted").

**2. "Arise Out Of"**

As mentioned *supra*, for the IP Exclusion to apply, not only must the misappropriation of one's image or likeness fall within the definition of "intellectual property rights" as defined in the contract, but also Plaintiffs' injury must "aris[e] out of the

21

infringement, use or violation of 'intellectual property rights'" in 300 F Street's advertisement. Dkt. Nos. 10-1 at 54, 10-2 at 58, 10-3 at 56.

Because the Court concludes the IP Exclusion is ambiguous, at this stage, Nautilus has not proven that image or likeness necessarily falls within the policies' definition of "intellectual property rights." Nautilus has therefore not met the first requirement for application of the IP Exclusion. As a result, at this stage of the proceedings, the Court need not determine whether Plaintiffs' injury "ar[o]s[e] out of the infringement, use, or violation of intellectual property rights." Dkt. Nos. 10-1 at 54, 10-2 at 58, 10-3 at 56. Nautilus's motion to dismiss based on application of the IP Exclusion is **DENIED**.

### III.  Bad Faith Violation

In their complaint, Plaintiffs assert a claim of bad faith under Georgia law, in violation of O.C.G.A. § 33-4-6. Dkt. No. 1 ¶¶ 53-58. Nautilus argued, and Plaintiffs agreed, that this claim must be dismissed. Dkt. Nos. 10 at 9-11, 12 at 14-15. Accordingly, Plaintiffs withdraw their claim for bad faith under § 33-4-6. Dkt. No. 12 at 14-15. This claim is therefore **DISMISSED** as withdrawn.

Nautilus further argues that Plaintiffs are unable to later assert a non-statutory bad faith claim under Georgia law. Dkt. No. 10 at 9-11. The Court declines to speculate about what Plaintiffs

may later be able to allege regarding a bad faith claim, and no
further discussion is warranted.

CONCLUSION

Accepting the allegations in the complaint as true and
construing them in the light most favorable to Plaintiffs, the
Court concludes that dismissal of the complaint is improper.
Plaintiffs' allegations in the underlying suit set forth a
plausible claim for negligence in advertising practices, so the
Knowing Violation Exclusion does not excuse Nautilus's duty to
defend or indemnify 300 F Street. Further, the Intellectual
Property Exclusion in the insurance agreement does not support
dismissal at this stage. For these reasons, Nautilus's motion to
dismiss pursuant to the policies' exclusion provisions, dkt. no.
10, is **DENIED**.  Further, Plaintiffs have withdrawn their claim for
bad faith (Count III). That claim is **DISMISSED** as withdrawn, and
Nautilus's motion to dismiss the bad faith claim is **DENIED as moot.**

**SO ORDERED** this 30th day of December, 2024.

_____
HON. LISA GODBEY WOOD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA